STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Petitioner,

v.

Edna KING, et al., Respondents.

No. D–0385.

Supreme Court of Texas.

April 24, 1991.

Rehearing Overruled June 5, 1991.

Cynthia L. Hooper, Dan Morales, Mary F. Keller, Lou McCreary, Austin, for petitioner.

John W. Newton, III, Gilbert I. Low, Beaumont, for respondents.

PER CURIAM.

Cecil King was killed and his wife and two daughters were injured when their car collided head-on with a car driven by Ronald Wright. King was driving in the right direction down a one-way access road toward a freeway entrance. Wright, who had been drinking, was headed the wrong way on that access road after having gone past a pair of "DO NOT ENTER" signs facing him. King's wife and daughters sued Wright and the State Department of Highways and Public Transportation. The jury found that both defendants' negligence caused the collision, attributing 15% to Wright, who settled with the Kings during trial, and 85% to the State. The Kings obtained favorable jury findings against the State on four theories: failure to place non-discretionary traffic signs or warning devices on the roadway; failure to correct the absence or condition of traffic signs or warning devices within a reasonable time after notice; failure to warn Cecil King of

---

a dangerous condition or make the condition reasonably safe; and failure to warn King of hazards not normally connected with the use of the roadway. The trial court rendered judgment on the verdict for the Kings against the State. The court of appeals affirmed. 795 S.W.2d 888 (1990).

Regarding the first of the Kings' four liability theories referred to above, their sign placement theory, the court of appeals recognized that the State would be immune from liability if its failure to place a sign were discretionary. *See* TEX.CIV.PRAC. & REM.CODE §§ 101.056, 101.060(a)(1).[1] The court concluded, however, that the State had a non-discretionary duty to install a "Lane Use Control" sign facing the direction from which Wright entered the one-way access road, based upon section 2B–17 of the 1980 Texas Manual on Uniform Traffic Control Devices (State Dep't of Highways and Public Transp.), which provides: "Lane Use Control signs shall be used where turning movements are required or unconventional turning movements are permitted from specific lanes at an intersection." The court of appeals held that section 2B–17 is mandatory, based upon section 1A–5 of the Manual which defines "shall" as:

> [a] *mandatory* condition. Where certain requirements in the design or application of the device are described with the "shall" stipulation, it is mandatory when an installation is made that these requirements be met.

Assuming that section 2B–17 applied to the accident site in this case, other provisions of the Manual indicate that it is not mandatory in the legal sense used by the court of appeals. For example, section 1A–4, another of the general provisions like section 1A–5, states:

> The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.[2]

Moreover, the statute authorizing adoption of the Manual affords the State discretion in placing traffic control devices. TEX.REV. CIV.STAT.ANN. art. 6701d (Vernon 1977 & Supp.1991).[3] To the extent the opinion of the court of appeals may be read to the contrary, we neither approve nor disapprove its language.

The Kings' sign placement theory is not the sole basis for the judgment rendered in their favor. Because we conclude that there is no error requiring reversal of the judgment of the court of appeals, we deny the State's application for writ of error.

1. Section 101.056 provides that the Tort Claims Act does not apply to waive sovereign immunity for a claim based on:
   (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
   (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.
   Similarly, section 101.060(a)(1) provides that the Act does not apply to a claim arising from "the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is the result of discretionary action of the governmental unit."

2. Similarly, section 2C–1 introduces the chapter on warning signs with the provision that "[t]he determination of the sign or signs to be erected

shall be on the basis of an engineering study using the following sections as guidelines."

3. "Sec. 29. The [State Highway and Public Transportation Commission] shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this Act for use upon highways within this state. Such system shall correlate with and so far as possible conform to the system then current as approved by the American Association of State Highway Officials.
   "Sec. 30. (a) The [Department] *may* place and maintain ... such traffic-control devices, conforming to its manual and specifications, upon all state highways *as it may deem necessary,* to indicate and carry out the provisions of this Act or to regulate, guide, or warn traffic." (Emphasis added.)